**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Sonia M. Pletz, | ) | Case No. 24 B 11199 |
| | ) | |
| Debtor. | ) | Hon. Michael B. Slade |
| | ) | |

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART MOTION
TO DETERMINE FEES, EXPENSES, AND CHARGES PURSUANT TO FRBP 3002.1(e)**

Sonia Pletz is a Chapter 13 debtor.  Her Plan was confirmed on October 18, 2024.  (*See* Dkt. Nos. 7, 26)  Absent further modification, the Plan will not be complete, and Ms. Pletz will not earn a discharge, unless she dutifully makes monthly plan payments through October 2029. (*See* Dkt Nos. 42, 52)  Ms. Pletz must also simultaneously make direct monthly payments to three secured creditors.  (Dkt. No. 7 § 3.1)  As contemplated by Chapter 13, satisfying these burdens will be challenging, but the confirmed Plan is achievable if Ms. Pletz is diligent and does not incur unexpected, unmanageable expenses between now and the end of the Plan term.

The confirmed Plan treats the secured claim of Consumers Credit Union ("CCU") by requiring Ms. Pletz to continue making contractual payments of $141 per month, "with any changes required by the applicable contract and noticed in conformity with any applicable rules." (Dkt. No. 7 § 3.1)  On February 24, 2026, frustrated by a slew of new charges, Ms. Pletz filed a motion to determine the fees or charges owed to CCU pursuant to Federal Rule of Bankruptcy Procedure 3002.1(e).  (Dkt. No. 43, the "Motion")  According to Ms. Pletz, since confirmation, CCU has "filed 19 different Notice of Mortgage Payment Changes and 10 additional Notices of Postpetition Mortgage fees, Expenses, and Charges . . . ."  (*Id.* ¶ 5 & Ex. A)  Ms. Pletz asks me to reduce CCU's fees and cap them at $1,500 total for the case.  (*Id.*, WHEREFORE ¶¶ 1– 2)

1

CCU's loan was a home equity line of credit secured by Ms. Pletz's principal residence. Its claim is governed by Federal Rule of Bankruptcy Procedure 3002.1. *See In re Stamps*, 644 B.R. 760, 776 (Bankr. N.D. Ill. 2022) ("So long as a creditor has a claim that is secured by a security interest in the debtor's principal residence and the plan provides that contractual payments on the claim will be maintained, the rule applies.") (quoting from the Advisory Committee Notes to Fed. R. Bankr. P. 3002.1 (2016 Amendments)). The rule requires lenders to file a notice of payment changes "at least annually," Fed. R. Bankr. P. 3002.1(b)(2)(A), with additional monthly notices *only* if the change exceeds $10 in any given month, *see* Fed. R. Bank. P. 3002.1(e). Notices of post-petition fees, expenses, and charges must be filed and served within 180 days of the date on which the charge was incurred. Fed. R. Bank. P. 3002.1(c).

Bankruptcy Rule 3002.1(b)(4) provides that a party who objects to a noticed charge may file a motion to determine the charge's validity. Rule 3002.1(e) then states that:

> **Determining Fees, Expenses, or Charges.** On a party in interest's motion, the court must, after notice and a hearing, determine whether paying any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law.

To be clear, as CCU states in its opposition to the Motion, Rule 3002.1(e) is not a free-floating provision that permits bankruptcy courts to review fees charged by a lender for reasonableness (unless the agreement itself requires that analysis). Instead, the question posed by a Bankruptcy Rule 3002.1(e) motion is straightforward—what is owed under the underlying agreement, unless the terms of the parties' agreement are otherwise superseded by applicable nonbankruptcy law? Here, no otherwise "applicable nonbankruptcy law" has been identified by either side in their briefing or in the underlying Proof of Claim. So the question posed by the Motion is simple— does CCU's agreement with Ms. Pletz require payment of the fees that CCU seeks to charge in its repeated (and apparently intended future) Notices?

First, let's look at the charges—Ms. Pletz calls some of them "egregious."  (Motion ¶ 11)
CCU's proof of claim sought $15,881.97, reflecting the amount owed as of the petition date.
(*See* Proof of Claim No. 24)  But according to the claims register, in the approximately eighteen
months since confirmation, CCU has filed twenty-nine (yes, 29) Notices modifying the amounts
sought.  (*See* Motion, Exhibit A)  Nineteen of the Notices were Notices of Mortgage Payment
Change, reflecting the nature of an Adjustable Rate Mortgage or "ARM."[1]  The remaining ten
were Notices of Postpetition Mortgage Fees, Expenses and Charges.[2]

Ms. Pletz's Motion recognizes that CCU's loan permits monthly changes in the interest
rate (which affects the monthly payment owed).  She challenges the ten Notices of Postpetition
Fees, Expenses and Charges submitted by CCU since confirmation, which thus far total "$5,925
in postpetition mortgage fees, expenses, and charges."  (Motion ¶ 6)  I reviewed each of the
challenged Notices, and they are summarized below:

- On January 6, 2025, CCU gave notice of charges for: (a) $450 in attorneys' fees for a "Plan Review" that took place July 31, 2024; (b) $475 in "Bankruptcy/Proof of Claim Fees" from the filing of the initial proof of claim on October 7, 2024; (c) $500 for "Pay change notices" on August 28, 2024, September 27, 2024, October 29, 2024, and November 27, 2024; (d) $250 for a loan payment history on October 7, 2024; and (e) $200 for a post-petition fee notice on January 2, 2025.

- On March 20, 2025, CCU gave notice of charges for: (a) $300 for pay change notices on December 27, 2024 and January 31, 2025; and (b) $200 for a post-petition fee notice on March 11, 2025.

- On April 24, 2025, CCU gave notice of charges for: (a) $350 for pay change notices on February 26, 2025 and March 28, 2025; and (b) $200 for a post-petition fee notice on April 21, 2025.

---

[1]  Motion, Exhibit A, at Notices dated 10/29/2024, 11/27/2024, 12/27/2024, 1/30/2025, 2/26/2025, 3/28/2025, 4/29/2025, 5/30/2025, 6/26/2025, 7/29/2025, 8/28/2025, 9/26/2025, 10/28/2025, 11/26/2025, 12/29/2025 (two filed that day), and 1/30/2026.  CCI filed two additional Notices of Mortgage Payment Change on 2/27/2026 and 3/2/2026 after this Motion was filed.  CCI also filed two Notices of Mortgage Payment Change on the docket pre-confirmation on 8/28/2024 and 9/27/2024 (*see* Dkt. Nos. 18, 22), bringing the grand total of claim supplements filed between the petition date and the filing of the Motion to thirty-one.

[2]  Motion, Exhibit A, at Notices dated 1/6/2025, 3/20/2025, 4/24/2025, 5/19/2025, 6/19/2025, 7/14/2025, 8/19/2025, 10/10/2025, 11/26/2025, 1/22/2026.

- On May 19, 2025, CCU gave notice of charges for: (a) $175 for a payment change notice on April 29, 2025; and (b) $200 for a post-petition fee notice on May 7, 2025.

- On June 19, 2025, CCU gave notice of charges for attorney's fees of $175 for filing a notice of payment change on May 30, 2025 and $400 for post-petition fee notices on May 19, 2025 and June 16, 2025. [3]

- On July 14, 2025, CCU gave notice of charges of attorneys' fees of $175 for noticing a payment change on June 26, 2025 and $200 for noticing a post-petition fee notice on July 7, 2025.

- On August 19, 2025, CCU gave notice of charges of attorneys' fees of $175 for noticing the payment change on July 29, 2025 and $200 for noticing the post-petition fee notice on August 13, 2025.

- On October 10, 2025, CCU gave notice of charges of attorneys' fees of $350 for noticing payment changes on August 28, 2025 and September 26, 2025, and $200 for noticing a post-petition fee on October 7, 2025.

- On November 26, 2025, CCU gave notice of charges of attorneys' fees of $175 for a notice of payment change on October 28, 2025 and $200 for a post-petition fee notice on November 18, 2025.

- On January 22, 2026, CCU gave notice of charges of attorneys' fees of $175 for a notice of payment change on November 26, 2025 and $200 for a post-petition fee notice on January 13, 2026.

I agree with Ms. Pletz that CCU's charges are excessive, individually and in aggregate. The Bankruptcy Rules only require creditors to file notice of payment changes on loans like these annually and monthly when the change is more than $10 in any one month. *See* Fed. R. Bankr. 3002.1(b)(2)(E). Notice of fees is only required biannually. *Id.* R. 3002.1(c). Most of the payment changes here didn't require CCU to file notices (because they were too small), and most of the fee notices weren't required either. CCU filed them anyway, then charged Ms. Pletz

---

[3] The charge for the May 19, 2025 post-petition fee notice seems to have been double billed on the June 19, 2025 notice. CCU's billing practice for the post-petition fee notices appears to be that the charge for the preparation of each notice is billed on the same notice as having been incurred a few days prior to its filing. Following this practice, the fee for the May 19, 2025 notice was levied on the May 19, 2025 notice as having been incurred on May 7, 2025. Because there was only one post-petition fee notice filed in May 2025, it appears that the fee levied on the June 19, 2025 notice and incurred on May 19, 2025 is duplicative.

4

for doing so.  The most absurd of these charges is the one emphasized in Ms. Pletz's Motion: on September 26, 2025, CCU filed a notice that Ms. Pletz's monthly payment increased by a single penny (from $125.60 to $125.61); CCU then charged her a combined $375 for filing the notice. And this practice has continued, which caused Ms. Pletz to file the Motion.  These fees are an unexpected expense that materially increases Ms. Pletz's monthly obligation to CCU, without good reason.  According to Ms. Pletz (and not disputed by CCU), if CCU continues to charge $375 per month in notice fees, CCU will receive a total of $16,810 in fees during the course of her Plan—more than the entire sum of the mortgage owed as of the petition date.  (Motion ¶ 14)

CCU's demands are unreasonable.  But the first-order question before me is whether these demands are supported by the parties' contract.  CCU cites Section 2 of the Note, arguing in opposition to the Motion that it "allows fees to be recovered for 'all other costs, charges and fees incurred in connection with this Agreement' in the bankruptcy case."  (Dkt. No. 49 at 2) While the internal quotation relied on by CCU exists in the Note, I don't read this vague boilerplate to permit indiscriminate, unnecessary charges merely because they may "connect" to the Note in the most technical sense possible.  Separate from the general and vague language cited by CCU, two sections of the Note are more specifically on point—Sections 16 and 21:

16.   **ADVANCES TO PROTECT OUR INTERESTS.** If you do not perform any promise or you breach any covenant in, this Agreement or the Security Instrument, we may take any action or incur any expenses reasonably necessary to rectify the non-performance or breach. We may charge such costs to you directly, and you agree to pay them on demand, or we may make a Loan Advance from your Account to cover such costs.

21.   **COLLECTION COSTS.** To the extent permitted by Applicable Law as defined in Section 29 below, you agree to pay (a) court costs and fees incurred in the collection of the Account or foreclosure of the lien created by the Security Instrument, (b) our reasonable fees paid to an attorney who is not our employee incurred in the collection of your Account, whether or not a lawsuit is filed, and (c) reasonable fees or charges paid to the trustee in connection with the Security Instrument, including fees for enforcing the lien against or posting for sale, selling, or releasing the Property.

Taking each in turn, Section 16 of the Note might permit CCU to take "any action" in Bankruptcy Court if Ms. Pletz had breached the mortgage agreement. But there is no evidence that she did, and the confirmed Plan indicates there was no arrearage at the time of confirmation. (Dkt. No. 7 § 3.1) Section 21(b) of the Note is more on point; it requires Ms. Pletz to pay "*reasonable* fees paid to an attorney who is not [CCU's] employee incurred in the *collection* of [her] Account" (emphasis added). So the contract requires CCU's attorneys' fee charges to both be reasonable and to be incurred for collection purposes. Preparing and filing CCU's proof of claim, and ensuring it is satisfied, can fairly be said to be required for CCU to collect the funds owed on Ms. Pletz's account. Some required notices also qualify. But filing unnecessary notices for which CCU then seeks to recover excessive attorneys' fees does not.

Under Seventh Circuit law, contractual provisions providing for the shifting of reasonable attorneys' fees do not require a "detailed, hour-by-hour review" of legal bills, but do require a showing of overall commercial reasonableness. *See Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011) (citing and quoting *Medcom Holding Co. v. Baxter Travenol Labs., Inc.,* 200 F.3d 518, 520 (7th Cir. 1999) and *Balcor Real Estate Holdings, Inc. v. Walentas– Phoenix Corp.,* 73 F.3d 150, 153 (7th Cir. 1996)). The Circuit has directed that in assessing whether the fees charged are commercially reasonable, I "look to the aggregate costs in light of the stakes of the case and opposing party's litigation strategy." *Id.*

Here, this is an adjustable rate mortgage and monthly rate changes that exceed $10 must be noticed by Rule. But smaller rate changes don't require filing notice at all, and notice of fees charged must only be filed twice per year. It makes no sense to encourage (or compensate for) the filing of unnecessary notices. And doing so isn't reasonable, particularly where (as here) doing so would cause the debtor to incur fees that, in the aggregate, exceed the mortgage owed.

6

Moreover, as Ms. Pletz points out, CCU appears to be charging her the maximum fee reimbursement allowed by Fannie Mae—an amount that does not necessarily reflect the actual work its counsel put in when preparing any one notice. While the Seventh Circuit does not direct me to review time detail, I agree with Ms. Pletz that preparing and filing these notices is a simple administrative task that shouldn't take more than a few minutes. The official forms—Form 410S1-Notice of Mortgage Payment Change and Form 410S2-Notice of Postpetition Mortgage Fees, Expenses, and Charges—are each two pages long. To notice a monthly payment change due to a change in interest rate on Form 410S1, a lender need only (a) fill in information identifying themself, the Debtor, and the claim; (b) check no on three unapplicable boxes; (c) check yes on a fourth box; (d) identify the date of payment change, and (d) list the new and old payment amounts. Filling out the related notice of fees is similarly straightforward—the lender simply has to (a) fill in the same identifying information; (b) identify the date of the last notice; (c) list the dates on which fees were incurred, and (d) state the amount of fees charged for each (which always appears to be the same flat rate). This information should all be readily at hand. And the completion, service, and filing of two two-page forms is plainly clerical work. Assuming it takes a generous ten minutes to fill out and file a single two-page notice, the individual performing this work would have to have a billing rate approaching $1500 per hour to generate $200 in fees—not a justifiable rate for this nature of work. While counsel for CCU typically signs the forms and certificates of service, it is unlikely that attorneys are actually performing these tasks or that it would take any professional more than a few minutes to do so. With no evidence from CCU suggesting otherwise, I have to conclude that charges of $175 and $200 per notice are not reasonable.

7

Accordingly, I will allow the attorneys' fees as charged for the Plan review ($450), filing of the proof of claim ($475), and to review the loan payment history ($250). I will also allow $100 in fees for each *required* payment change notice (i.e., notices filed where the monthly payment change exceeded $10), and fees have been noticed for six of these to date ($600). Finally, I will allow $100 in fees for each of two necessary notices of fees per year—and three have been filed so far ($300).[4] In sum, CCU is allowed a total of $2,075 in attorney's fees to date. The additional fees charged are disallowed.

Moreover, so long as Ms. Pletz continues to make her mortgage payments on a timely basis, I do not anticipate (given the facts of this case) allowing CCU to charge her more than $100 per notice in additional attorneys' fees, or allowing CCU to charge attorneys' fees for filing notices not required by the Bankruptcy Rules. While CCU is correct that Rule 3002.1 addresses fees in hindsight rather than forecasted fees, giving parties notice of this should allow them to resolve further disputes without additional court intervention.[5] I find that further fees are not owed under the terms of the parties' agreement and applicable Seventh Circuit law.

For the avoidance of doubt, this ruling is entered without prejudice. If CCU offers evidence to substantiate the purported necessity and reasonableness of these fees charged, I will consider it. But I am skeptical that such evidence exists.

A separate order implementing this ruling, granting Ms. Pletz's Motion in part and denying it in part, will follow.

---

[4] The earliest fee claimed by CCU was incurred on July 31, 2024. Per Rule 3002.1(c), that fee needed to be noticed by January 27, 2025, given the 180-day cycle on which required fees should be noticed in this case.

[5] The parties are also welcome to involve the Court in creative solutions to resolve such disputes efficiently. For example, pursuant to the agreement of the parties, one of my colleagues in Maryland excused a lender from filing future notices of payment change (but not future notices of fees, expenses, or charges otherwise incurred in connection with its claim) in a similar case to alleviate the financial burden of such notices on the debtor. *In re Cruz*, 663 B.R. 792, 794 (Bankr. D. Md. 2024). I do not answer here whether I would have the authority to allow this practice, but I would be open to considering it pursuant to a joint request by the parties.

8

Signed:   April 23, 2026            By:   _____

MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE